B 104   (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFF **CARDINAL POINT PARTNERS, INC., Liquidating Trustee** | DEFENDANT **ROYAL BANK OF CANADA** |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.) Andrew T. Houston Moon Wright & Houston 227 W. Trade Street, Suite 1800 Charlotte, North Carolina 28202 Telephone:  704-944-6560 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check one box only) ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin. ☐ Creditor   ☐ Other ☐ Trustee | PARTY (Check one box only) ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin. ☒ Creditor   ☐ Other ☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Recover Money or Property Pursuant to 11 U.S.C. §§ 544(b), 547, 548, 550, and 502 N.C. Gen. Stat. § 39-23.1

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1)— Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) — Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3)— Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4)** — Objection/Revocation of Discharge
☐ 41 -Objection **/** revocation of discharge §727(c),(d),(e)

**FRBP 7001(5) — Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6)— Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6)— Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation Obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) — Injunctive Relief**
☐ 71-Injunctive relief— imposition of stay
☐ 72-Injunctive relief— other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**PREP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**PREP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case—15 U.S.C. §78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand – At Least $2,798,520 |
| Other Relief Sought | |

| BANKRUPTY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br>**SOLARIS INDUSTRIES, INC.** | | BANKRUPTCY CASE NO.<br><br>14-40105 |
| DISTRICT IN WHICH CASE IS PENDING<br><br>WESTERN | DIVISIONAL OFFICE<br><br>CHARLOTTE | NAME OF JUDGE<br><br>J. CRAIG WHITLEY |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*/s/ Andrew T. Houston* | | |
| DATE<br><br>2/13/2015 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Andrew T. Houston | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management Electronic Case Filing system (CM/ECF), (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys**. Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| In re:<br><br>**SOLARIS INDUSTRIES, INC.,**<br><br>　　　　　　　　　　　　Debtor.<br>──────────────<br>**CARDINAL POINT PARTNERS, INC.,**<br>**Liquidating Trustee,**<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>**ROYAL BANK OF CANADA,**<br><br>　　　　　Defendant. | Chapter 11<br><br>Case No: 14-40105<br><br><br><br><br>Adversary Proceeding No.: 15- |

**COMPLAINT SEEKING: (I) AVOIDANCE OF UPSTREAM OBLIGATIONS,
(II) AVOIDANCE AND RECOVERY OF FRAUDULENT AND/OR PREFERENTIAL
TRANSFERS, (III) DISALLOWANCE OF CLAIM, AND (IV) EQUITABLE RELIEF**

NOW COMES the plaintiff Cardinal Point Partners, Inc. (the "Plaintiff"), in its capacity as the liquidating trustee pursuant to the Liquidating Trust Agreement dated as of August 27, 2014 (the "Liquidating Trust Agreement"), by and through undersigned counsel, and hereby alleges as follows:

**<ins>INTRODUCTION</ins>**

1.　　On March 13 2013, Solaris Industries, Inc. ("Solaris," or the "Debtor") executed an upstream guaranty in favor of the Royal Bank of Canada ("RBC," or "Defendant") by which the Debtor guaranteed a CAD $6,500.000.00 loan from RBC to the Debtor's parent company, Delhi-Solac, Inc. ("Delhi-Solac"). To secure this upstream guaranty, the Debtor also pledged to RBC, among other things, a security interest in all of the Debtor's accounts and inventory, as well as the proceeds and products thereof. Further, between May 2013 and February 2014, the

Debtor made payments totaling $2,798,520.79 to RBC on account of these purported obligations owed to RBC.

2.      At the time the Debtor made the payments and incurred the obligations described herein, the Debtor: (a) was insolvent or thereby rendered insolvent, (b) was not paying its debts as and when they came due in the ordinary course of business, (c) lacked adequate capital to continue operating as a going concern, and (d) failed to receive reasonably equivalent value in exchange for incurring such obligations and making such payments.

3.      As a consequence, the obligations and transfers identified herein are avoidable fraudulent and/or preferential transfers that can be avoided and recovered, as applicable, for the benefit of the Debtor's estate to pay unsecured creditors.  The Plaintiff thus respectfully requests the entry of an order: (a) avoiding the obligations and transfers identified herein pursuant to 11 U.S.C. §§ 544, 547 and 548, as applicable; (b) compelling recovery of the transfers or their value from the Defendant pursuant to 11 U.S.C. § 550(a); and (c) granting the Plaintiff such other and further relief as is just and reasonable.

## PARTIES

4.      Plaintiff is the duly appointed trustee of the liquidating trust created pursuant to the confirmed *First Amended Plan of Liquidation of Solaris Industries, Inc.  Pursuant to Section 1121(a) of the Bankruptcy Code* dated July 11, 2014 (the "Plan of Liquidation"), and the terms of the Liquidating Trust Agreement.

5.      Defendant RBC is a banking corporation chartered in Canada, with a principal place of business located in Montreal, Quebec, Canada.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

7.      This matter is a core proceeding pursuant to 28 U.S.C. §157.

8.      Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409(a).

9.      The statutory predicates for relief are 11 U.S.C. §§ 105, 502, 544, 547, 548, and 550 as well as N.C. Gen. Stat. §39-23.1 *et seq*.

10.     The Plaintiff commences this action pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## FACTS

### A.  *General Background and Procedural History of the Chapter 11 Case*

11.     The Debtor was a North Carolina corporation that was formed on January 7, 2010, with the filing of its Articles of Incorporation with the North Carolina Secretary of State's office.

12.      Prior to the Debtor's bankruptcy filing, the company designed and manufactured tubular steel products used in a variety of applications, including furniture, green houses, in-store displays and communications structures.

13.      Delhi-Solac was the Debtor's parent company and owned 100% of the Debtor's outstanding shares of common stock.

14.     On March 3, 2014 (the "Petition Date"), Coilplus, Inc., Feralloy Corporation, Metal One America, Inc., and Pacesetter Steel Service, Inc. (the "Petitioning Creditors"), filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court against the Debtor.

15.     The Debtor filed a motion to convert the case to a proceeding under Chapter 11 of the Bankruptcy Code and for entry of an order for relief on March 17, 2014.

16.    The Court entered an order converting the case to a proceeding under Chapter 11 of the Bankruptcy Code on March 28, 2014.

17.    The Debtor filed the Plan of Liquidation on July 11, 2014.

18.    On August 18, 2014, the Court entered an Order confirming the Debtor's Plan of Liquidation.

19.    Pursuant to, among other provisions, Articles 1.6, 1.15, 1.45, 1.46, 7.1.2, 9.1, and 9.8 of the Plan of Liquidation, all causes of action including, without limitation, avoidance actions vested in the Liquidating Trust, and the Liquidating Trustee was appointed as the representative of the estate pursuant to 11 U.S.C. §§ 105(a) and 1123(b)(3) to pursue such causes of action.

### B. The Delhi Loan, the Upstream Guaranty, and the Debtor's Pledge of its Assets to Secure Credit from RBC for the Benefit of Delhi-Solac

20.    RBC and Delhi-Solac had a long-standing lending relationship whereby RBC made revolving loans to fund the operations of Delhi-Solac.  The credit facility between RBC and Delhi-Solac is collectively referred to in this Complaint as the "Delhi Loan."

21.    Historically, Solaris was neither an obligor nor guarantor of the Delhi Loan.

22.    In January of 2013, Delhi-Solac and RBC were negotiating the terms of a renewal and extension of the Delhi Loan.

23.    Delhi-Solac and RBC memorialized the terms of the renewal and extension in that certain Credit Agreement dated as of January 31, 2013, entered into by and between Delhi-Solac and RBC (the "Delhi Credit Agreement").

24.    A true and correct copy of the Delhi Credit Agreement is attached hereto as **Exhibit A** and incorporated by reference as if set forth fully herein.

25.     Pursuant to the Delhi Credit Agreement, Delhi-Solac was required to provide, among other things, the following as collateral security for the repayment of the Delhi Loan:

> Guaranty and subordination agreement (form 90055) in the amount of $6,500,000 signed by Solaris Industries, Inc., accompanied by an independent legal advice and supported by a security agreement and filing under Uniform Commercial Code (UCC) constituting a first ranking security interest on all present and future accounts receivable and inventory of Solaris Industries, Inc., to be registered in the state of North Carolina.

26.     As contemplated by the Delhi Credit Agreement, the Debtor executed that certain Guaranty and Subordination Agreement in favor of RBC on March 13, 2013 (the "Solaris Guaranty").

27.     A true and correct copy of the Solaris Guaranty is attached hereto as **Exhibit B** and incorporated by reference as if set forth fully herein.

28.     The Solaris Guaranty provides in part:

> FOR VALUE RECEIVED, and in order to induce [RBC] to grant, extend or continue credit or other financial accommodations to [Delhi-Solac], the [Debtor] unconditionally and irrevocably guarantees to [RBC] and its successors and assigns the complete and punctual payment when due . . . of all Liabilities . . . at any time owing by [Delhi-Solac] to [RBC] . . . The [Debtor's] liability under this Guaranty . . . is limited to the Liabilities under or arising out of or in connection with the Credit Agreement dated as of January 31, 2013 between [RBC] and [Delhi-Solac], as that agreement may be in effect from time to time, up to a maximum amount of CAD 6,500,000$ together with interest from the date of demand of payment at the prime interest rate of [RBC] plus five percent per annum.

29.     The Debtor also executed that certain Security Agreement date March 13, 2013 in favor of RBC (the "Solaris Security Agreement," and together with the Solaris Guaranty, the "Upstream Obligations").

30.     A true and correct copy of the Solaris Security Agreement is attached hereto as **Exhibit C** and incorporated by reference as if set forth fully herein.

31.     The third recital to the Solaris Security Agreement provides that a condition to the effectiveness of the extension of the Delhi Loan "is Debtor's execution and delivery of the [Solaris Guaranty] and this Agreement, and to induce [RBC] to extend credit to [Delhi-Solac] under the Loan Agreement in accordance with the terms thereof, Debtor has agreed to execute and deliver [the Solaris Security Agreement]."

32.     The only recitation of consideration provided by RBC to the Debtor in exchange for entering the Solaris Security Agreement is found in the fourth recital, which provides that the Solaris Security Agreement was given in exchange for "Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce [RBC] to extend credit and make advances to [Delhi-Solac] . . . ."

33.     Pursuant to the terms of the Solaris Security Agreement, the Debtor pledged, among other things, its accounts, inventory and the proceeds and products of the foregoing to secure its obligations under the Solaris Guaranty.

34.     RBC filed a UCC-1 Financing Statement with the Office of the Secretary of State of North Carolina on March 14, 2013 with File Number 20130024810B in order to purportedly perfect the lien and security interest given to RBC in the Solaris Security Agreement (the "Pledge Transfer").

35.     A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit D** and incorporated by reference as if set forth fully herein.

36.     The Debtor did not enter into the Upstream Obligations in exchange for any value to the Debtor itself.

37.     To the contrary, in connection with the negotiation of the Delhi Credit Agreement, RBC informed Delhi-Solac that it required the Solaris Guaranty and Solaris Security

Agreement in exchange for RBC's continued lending to Delhi-Solac on the terms set forth in the Delhi Credit Agreement.

38.     Indeed, RBC informed Delhi-Solac that it required the Solaris Guaranty and Solaris Security Agreement because Delhi-Solac's accounts receivable and stock were insufficient standing alone to satisfy RBC's required underwriting standards governing the ratio between debt and collateral security.

39.     Further, and as contemplated under the Delhi Credit Agreement, Delhi-Solac received an additional $500,000.00 of availability under the Delhi Loan through and including March 2013, in exchange for the Debtor's commitment to enter the Solaris Guaranty and Solaris Security Agreement.

40.     This additional credit was used to fund the operations of Delhi-Solac and not for the Debtor's benefit.

### C.  The Debtor Paid $2,798,520.79 to RBC Between May 2013 and February 2014

41.     After executing the Solaris Guaranty and Solaris Security Agreement in March of 2013, the Debtor made payments totaling $2,798,520.79 to RBC between May 2013 and February 2014 (collectively, the "Payments," and together with the Pledge Transfer, the "Transfers").

42.     Specifically, the Debtor made the following payments to RBC:

| Date | Amount | Check No. |
|---|---|---|
| 05/08/2013 | $161,028.03 | 4752 |
| 05/08/2013 | $53,147.33 | 4751 |
| 06/11/2013 | $59,524.58 | 4790 |
| 06/11/2013 | $68,259.69 | 4789 |

| | | |
|---|---|---|
| 06/26/2013 | $179,170.73 | 4991 |
| 07/10/2013 | $82,318.01 | 5027 |
| 07/17/2013 | $99,502.67 | 5130 |
| 07/30/2013 | $36,379.40 | 5120 |
| 07/30/2013 | $103,894.35 | 5121 |
| 01/23/2014 | $1,200,000.00 | Wire Transfer |
| 01/27/2014 | $45,680.00 | 5834 |
| 02/04/2014 | $25,839.00 | 5839 |
| 02/10/2014 | $400,000.00 | Wire Transfer |
| 02/11/2014 | $12,525.00 | 5847 |
| 02/18/2014 | $21,252.00 | 5852 |
| 02/24/2014 | $200,000.00 | Wire Transfer |
| 02/28/2014 | $50,000.00 | Wire Transfer |

43.    All of the Payments were made by check or wire transfer, and drawn on the Debtor's Corporate Business Account with PNC Bank with account number ending 4716, and deposited in Delhi-Solac's Business Account with RBC with account number ending 8551 (the "Delhi Account").

44.    Attached hereto as **Exhibit E** and **Exhibit F**, respectively, are true and correct annotated excerpts from the Debtor's bank statements illustrating the payments from Debtor and the corresponding deposits to the Delhi Account.

45.    At all times relevant hereto, the Delhi Account was under the legal dominion and control of RBC.  Pursuant to the terms of the Delhi Loan, Delhi-Solac was required to maintain the Delhi Account with RBC for Delhi-Solac's day-to-day banking business.

46.     Pursuant to the terms of the Delhi Credit Agreement, Delhi-Solac "authorize[d] [RBC] daily or otherwise as and when determined by [RBC], to ascertain the balance of each General Account . . . ." and if the account had a credit balance, then RBC could "apply the amount of such credit balance or any part" thereof to reduce the sums owed by Delhi-Solac to RBC under the Delhi Loan.

47.     Between approximately May 8, 2013 and July 30, 2013, the Debtor made payments totaling $843,224.79 to the Delhi Account as summarized above.  As contemplated under the Delhi Credit Agreement, RBC exercised legal dominion and control over the funds by sweeping the funds from the Delhi Account and paying the funds over to RBC, thereby reducing the balance of the Delhi Loan.

48.     In or around January 2014, Delhi-Solac defaulted on its obligations owed to RBC under the Delhi Credit Agreement.

49.     As a result, on January 16, 2014, RBC sent a Notice of Withdrawal of Authorization (the "Notice") to collect claims to the Debtor and Delhi-Solac demanding that all funds owed to Delhi-Solac should be paid over to RBC.

50.     A true and accurate copy of the Notice is attached hereto as **Exhibit G** and incorporated by reference as if set forth fully herein.

51.     After receipt of the Notice, the Debtor made payments totaling $1,955,296.00 to the Delhi Account.  As contemplated under the Delhi Credit Agreement, RBC exercised legal dominion and control over the funds by sweeping the funds from the Delhi Account and paying the funds over to RBC, thereby reducing the balance of the Delhi Loan.

52.     The Debtor did not receive any value in exchange for the Payments or the Pledge Transfer.

### D.    The Debtor's Financial Circumstances at the Time the Debtor made the Transfers and Incurred the Upstream Obligations

53.    The Debtor was insolvent at the time it made the Transfers and incurred the Upstream Obligations.  The Debtor's internal balance sheets show that the Debtor's assets were significantly exceeded by its liabilities from January 1, 2013 through the date of the filing of the involuntary petition.  In particular, the Debtor's internal balance sheets show that from March 2013 through the Petition Date that the Debtor's assets totaled from approximately $6.8 Million to $7.3 Million, while its liabilities totaled approximately $9.4 Million to $10.1 Million during that same time period.

54.    Moreover, the Debtor was undercapitalized at the time it made the Transfers and incurred the Upstream Obligations, as the Debtor failed to retain sufficient capital in the business to continue operating as a going concern while paying its obligations as and when they came due.

55.    In addition, the Debtor either intended to incur, or believed that it would incur, debts that the Debtor could not repay at the time it incurred the Upstream Obligations and made the Transfers.

56.    Further, at the time the Debtor made the Transfers and incurred the Upstream Obligations, the Debtor was not paying its debts as and when they came due including, without limitation, the debts owed to its trade vendors such as the Petitioning Creditors.

### FIRST CLAIM FOR RELIEF
(Avoidance of Obligations and Transfers – 11 U.S.C. § 548)
(Constructive Fraud)

57.    Plaintiff realleges all paragraphs of this complaint and incorporates them as if fully set forth herein.

58.     The Transfers and the Solaris Security Agreement were transfers of interests of the Debtor in property.

59.     The Transfers were made and the Upstream Obligations were incurred within two (2) years of the Petition Date.

60.     The Debtor received less than reasonably equivalent value in exchange for making the Transfers and incurring the Upstream Obligations.

61.     The Debtor was insolvent on the date the Transfers were made and the Upstream Obligations were incurred or become insolvent as a result of making such Transfers or incurring such Upstream Obligations.

62.     At the time of the Transfers and the dates the Upstream Obligations were incurred, the Debtor was engaged in business or a transaction, or was about to engage in business or transactions, for which any property remaining with the Debtor was an unreasonably small capital.

63.     At the time of the Transfers and the dates the Upstream Obligations were incurred, the Debtor intended to incur, or believed that the Debtor would incur, debts that were beyond the Debtor's ability to pay as such debts matured.

64.     As a result, the Plaintiff is entitled to avoid the Upstream Obligations and the Transfers pursuant to 11 U.S.C. § 548.

## SECOND CLAIM FOR RELIEF
(Avoidance of Obligations and Transfers – 11 U.S.C. § 544(b), N.C.G.S § 39-23.1, *et seq*.)
(Constructive Fraud)

65.     Plaintiff realleges all paragraphs of this complaint and incorporates them as if fully set forth herein.

66.     The Transfers and the Solaris Security Agreement were transfers of interests of the Debtor in property.

67.     The Transfers were made and the Upstream Obligations were incurred within four (4) years of the Petition Date.

68.     The Debtor received less than reasonably equivalent value in exchange for making the Transfers and incurring the Upstream Obligations.

69.     The Debtor was insolvent on the date the Transfers were made and the Upstream Obligations were incurred or become insolvent as a result of making the Transfers or incurring the Upstream Obligations.

70.     At the time of the Transfers and the dates the Upstream Obligations were incurred, the Debtor was engaged in business or a transaction, or was about to engage in business or transactions, for which any property remaining with the Debtor was an unreasonably small capital.

71.     At the time of the Transfers and the dates the Upstream Obligations were incurred, the Debtor intended to incur, or believed that the Debtor would incur, debts that were beyond the Debtor's ability to pay as such debts matured.

72.     As a result, Plaintiff is entitled to avoid the Upstream Obligations and Transfers pursuant to 11 U.S.C. §544(b) and N.C. Gen. Stat. § 39-23.1 *et seq.*

### THIRD CLAIM FOR RELIEF
(Avoidance of Preferential Payments—11 U.S.C. § 547)

73.     Plaintiff realleges all paragraphs of this complaint and incorporates them as if fully set forth herein.

74.     As an alternative claim for relief, the Plaintiff hereby alleges that the Debtor transferred the sum of $1,955,296.00 to RBC within ninety (90) days of the Petition Date, which constituted one or more transfers of an interest of the Debtor in property (the "Preferential Transfers").

75.     The Preferential Transfers were made to or for the benefit of the Defendant.

76.      The Preferential Transfers were for or on account of an antecedent debt owed by the Debtor to the Defendant before the Preferential Transfers were made including, without limitation, claims RBC asserted against the Debtor based on rights of subrogation, contribution and/or indemnity.

77.     The Preferential Transfers enabled the Defendant to receive more than it would have received if: (i) the case were a case under chapter 7 of the Bankruptcy Code, (ii) the Preferential Transfers had not been made, and (iii) the Defendant received payment of the debt owed, to the extent provided by the provisions of the Bankruptcy Code.

78.     As a result, the Plaintiff is entitled to avoid the Preferential Transfers pursuant to 11 U.S.C. § 547.

## FOURTH CLAIM FOR RELIEF
(Recovery of Payments—11 U.S.C. § 550)

79.     Plaintiff realleges all paragraphs of this complaint and incorporates them as if fully set forth herein.

80.     The Payments are avoidable transfers pursuant to 11 U.S.C. §§ 544, 547 and/or 548.

81.     The Defendant was either the initial transferee of the Payments or the person or entity for whose benefit such Payments were made.

82.     Alternatively, the Defendant was the immediate or mediate transferee of the initial transferee of the Payments.

83.     As a result, the Plaintiff is entitled to recover the Payments or their value from the Defendant pursuant to 11 U.S.C. § 550(a).

## FIFTH CLAIM FOR RELIEF
### (Objection to Claim – 11 U.S.C. § 502)

84.    Plaintiff realleges all paragraphs of this complaint and incorporates them as if fully set forth herein.

85.    On April 15, 2014, RBC filed a proof of claim in the Debtor's bankruptcy case, asserting a secured claim of $300,222.52 ("RBC Claim"). [Claim 8-1].

86.    The RBC Claim allegedly arises from the Upstream Obligations and is allegedly secured by the Debtor's accounts and inventory.

87.    The Debtor submits the RBC Claim should be disallowed because:

(a) RBC has already received full payment in satisfaction of the RBC Claim;

(b) the doctrine of marshalling would direct RBC to look to its principal obligor for satisfaction prior to asserting a claim against the Debtor;

(c) RBC has failed to adequately document its claim;

(d) the RBC Claim is duplicative of other claims asserted by RBC; and

(e) the RBC Claim is barred by 11 U.S.C. § 502(d) because RBC is in possession of property recoverable by the Debtor's estate pursuant to 11 U.S.C. § 544 and 11 U.S.C. § 550.

88.    As a result, the RBC Claim should be disallowed in its entirety.

WHEREFORE, the Plaintiff respectfully requests judgment as follows:

1.    That the Upstream Obligations and the Transfers be avoided pursuant to 11 U.S.C. § 548;

2.    That the Upstream Obligations and the Transfers be avoided pursuant to 11 U.S.C. § 544 and N.C. Gen. Stat. 39-23.1 *et seq.*;

3.      That the Preferential Transfers, if not avoided pursuant to the first and second claims for relief, be avoided pursuant to 11 U.S.C. § 547;

4.      That RBC be ordered to pay the Plaintiff the sum of up to $2,798,520.79 or the value of such property free and clear of any and all claims liens, interests, or other encumbrances thereon pursuant to 11 U.S.C. § 550;

5.      That the RBC Claim should be disallowed in its entirety;

6.      That the Plaintiff be awarded its costs and expenses including, without limitation, its reasonable attorneys' fees to the extent permitted by applicable law;

7.      That the Plaintiff be awarded interest on the judgment amount at the maximum legal rate; and

8.      That the Court grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: Charlotte, North Carolina
       February 13, 2015

                              MOON WRIGHT AND HOUSTON, PLLC


                              _____ */s/ Andrew T. Houston*_____
                              Andrew T. Houston (NC Bar No. 36208)
                              227 West Trade Street, Suite 1800
                              Charlotte, North Carolina 28202
                              Telephone: (704) 944-6560
                              Facsimile:  (704) 944-0380
                              *Counsel for the Plaintiff*